IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRITTANY HUDSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 1:20-CV-928-RP |
| LINCARE INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Lincare Inc.'s Motion to Strike Jury Trial Demand, Dkt. 20. Plaintiff Brittany Hudson filed a response to the motion, Dkt. 21, and Lincare filed a reply, Dkt. 23. Having considered the parties' briefs, the record, and the relevant law, the Court will deny the motion.

### I.     BACKGROUND

This is an employment discrimination case. Hudson, a Black woman, worked as a sales representative for Lincare from April 2015 to August 2019. Dkt. 17, at 3. At the time she was hired, Hudson had completed six years of college, during which she worked as research assistant, and had held one job after college. Dkt. 20-1. As a condition of her employment with Lincare, Hudson signed a jury waiver on April 8, 2015. Dkt. 20-2. In relevant part, the jury waiver states that "Your signature below indicates that you understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury." *Id.*[1] The same jury waiver

---

[1] The full jury trial waiver states: "Your signature below indicates that you understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury. To the extent permitted by law, you are knowingly, voluntarily, and intentionally waiving any right you may have to a trial by jury in any

1

provision was also included in Lincare's employee handbook, which was provided to Hudson on June 29, 2015. Dkts. 20-3, 20-4, 20-5.

Hudson began working for Lincare's Austin-based office in December 2018, and thereafter "was subjected to harassment and discrimination on the basis of her race and color." Dkt. 17 at 3. Hudson alleges that her manager, Tina Averra, belittled and threatened her, and made inappropriate comments about Hudson's appearance, claiming she was entitled to do so because her daughter-in-law is Black. *Id.* at 3-4. Other coworkers "incessant[ly]" called Hudson the n-word, and used other racial slurs to refer to Hudson. *Id.* at 4 -5 ("coworkers would make racist remarks, such as, 'Why's Brittany so loud and black?' and 'Brittany's ghetto.'"); *see id.* ("Plaintiff was also told by coworkers that another secretary, Patricia Ruiz, had called her 'Aunt Jemima.'").

During one meeting where Hudson asked her coworkers to stop using the n-word at work, secretary Anicia Torres responded, "Bitch, I'm gonna say [n-word] when I want. I'm gonna say [n-word] if I want to say [n-word]. Sue me bitch." *Id.* Manager Casey Greenway, present at the time, declined to do anything in response to Torres' racist outburst. *Id.* at 5. Hudson further alleges that when she reported the racism she encountered to human resources, they failed to initiate an investigation or take disciplinary action. *Id.* Instead, Hudson alleges that Lincare retaliated against her for complaining of her coworker's racist comments. *Id.* at 5. Hudson's harassers continued to verbally abuse her at work, refused to work with her, sabotaged her work, and blocked her from receiving commissions she was owed. *Id.* Hudson alleges that she was constructively discharged by Lincare due to its failure to take any action in response to "intolerable conditions." *Id.*

---

litigation arising out of your employment with Lincare or any of its subsidiaries or related entities." Dkt. 20-2.

Hudson initiated this action on September 9, 2020, alleging that Lincare discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., the Texas Employment Discrimination Act, Tex. Lab. Code §§ 21.001 et seq., and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et seq. Dkt 1; Dkt. 17, at 5-10. On March 12, 2021, Lincare filed the instant motion to strike Hudson's jury demand from her first amended complaint, arguing that Hudson "knowingly and voluntarily waived her right to a jury trial by executing a valid jury trial waiver during her employment." Dkt. 20, at 1.

## II. LEGAL STANDARDS

The Seventh Amendment of the Constitution preserves the common law right to a jury trial in civil suits. U.S. Const. amend. VII. The right, however, may be waived by prior written agreement of the parties. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986); *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002). Such written agreements to waive the right to jury trial are generally enforceable against parties who bring suit, as long as the waiver was made knowingly, voluntarily, and intelligently. *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998). Even so, courts should "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937); *RDO*, 191 F. Supp. 2d at 813 ("courts will indulge every reasonable presumption against a waiver of that right.").

In determining whether a jury-trial waiver was made knowingly, voluntarily, and intelligently, courts in the Fifth Circuit generally balance four factors: "(1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was

3

inconspicuous." *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-444-RP, 2020 WL 4370138, at *2 (W.D. Tex. July 30, 2020) (quoting *RDO*, 191 F. Supp. 2d at 813-14); *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 619-20 (N.D. Tex. 2018). Although the Fifth Circuit has never addressed the issue, courts in this circuit have found that the party seeking to enforce the waiver bears the burden of demonstrating a valid waiver. *MWK*, 2020 WL 4370138 at *2; *RDO*, 191 F. Supp. 2d at 813.

### III. DISCUSSION

Lincare moves to strike Hudson's jury demand from her first amended complaint, arguing that the four factors outlined above weigh in favor of enforcing the jury trial waiver Hudson signed at the initiation of her employment with Lincare. Dkt. 20, at 11. Hudson responds that the executed jury waiver is unenforceable because it was "an adhesion contract imposed upon a very junior employee as a condition of her employment," and as such the four factors weigh against its enforceability in this case. Dkt. 21, at 10. The Court will address each of the relevant factors in turn.

#### A. Gross Disparity in Bargaining Power

The Court first finds that a gross disparity in bargaining power existed between Hudson and Lincare such that the first factor weighs against enforcement of the jury trial waiver. While Lincare is correct that the employer-employee relationship alone is insufficient to demonstrate a gross disparity in bargaining power between the parties, "a unilateral jury waiver suggests a sufficient disparity of bargaining power." *MWK*, 2020 WL 4370138 at *2.; *Zavala v. Aaron's, Inc.*, No. 4:15-CV-123, 2015 WL 5604766, at *3 (E.D. Tex. Sept. 23, 2015) ("the fact that a contract is unilateral suggests that there is a disparity in bargaining power and/or the parties did not have an opportunity to negotiate."). Here, the jury trial waiver Hudson signed was unilateral

4

because it only included a signature line for Hudson, was only signed by her, and its language explicitly stated that it applied to her as the signatory of the waiver. Dkt. 20-2, at 1 ("any lawsuit that **you** may bring against the Company or any of its subsidiaries or related entities will be decided by a judge, without a jury." (emphasis added));[2] *Zavala*, 2015 WL 5604766 at *4 ("a jury waiver agreement that contains a signature of only one party or a signature line for only one party suggests that only one party was bound.").

Lincare cites *Blunt v. Prospect Mortg., LLC*, No. 3:13-CV-1595-P, 2014 WL 12585646, at *1 (N.D. Tex. Feb. 25, 2014), for the proposition that courts may find a jury trial waiver bilateral even in the absence of any textual indication that it applies to both parties. Yet in *Blunt*, the court found that there was no gross disparity of bargaining power where an employee sought to enforce a jury trial waiver against an employer who had drafted the waiver. *Id.* Here, in contrast, it is Hudson, Lincare's employee, who seeks to invalidate a jury trial waiver she played no part in drafting or, as explained below, negotiating. Moreover, the jury trial waiver, which was drafted by Lincare, specifically refers to Hudson's waiver of her right to a jury trial and does not include Lincare's signature. Dkt. 20-2, at 1 ("Your signature below indicates that you understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury."); *Hopple v. Prospect Mortg., LLC*, No. EP-13-CV-00137-DCG, 2013 WL 12321456, at *3 (W.D. Tex. Nov. 13, 2013) (finding jury trial waiver one-sided where employer did not sign the waiver, and the language of the waiver expressly provided that the signatory waived his right). Because "the fact that a contract is unilateral suggests that there is a disparity

---

[2] Defendant inexplicably emphasize the second half of this sentence when quoting the waiver in their reply, while ignoring the first half of the sentence which uses "you" to refer to Plaintiff as the signatory of the jury trial waiver. (Dkt. 23, at 2) ("any lawsuit that you may bring against the Company or any of its subsidiaries or related entities **will be decided by a judge, without a jury**.").

in bargaining power," the Court finds that the first factor weighs against enforcement of the jury trial waiver. *Zavala*, 2015 WL 5604766, at *3.

### B. Business or Professional Experience

The second factor weighs slightly in favor of enforcement of the jury trial waiver. When assessing plaintiff's business acumen, courts may refer to the employee's education and work experience. *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. No. 4:16-CV-01282, 2017 WL 3887235, at *4 (S.D. Tex. Sept. 5, 2017). Here, Hudson attended college, held multiple jobs while studying, and held one job after college before working for Lincare—rendering her more sophisticated than the plaintiff in *Jones*, a high school dropout the court deemed competent enough to understand "the import of the jury waiver provision." Dkt. 20-1; *Jones*, 2017 WL 3887235, at *4 (plaintiff had sufficient professional experience because "while there is nothing in [his] background that would indicate he was uniquely qualified to understand the import of the jury-waiver provision, the language employed is unambiguous"). At the same time, most cases finding an employee to have sufficient business experience to tilt this factor in favor of enforcement dealt with highly skilled employees—here Hudson was starting her second job after college in an entry-level sales position. *See, e.g.*, *MWK Recruiting, Inc. v. Jowers*, 2020 WL 4370138, at *3 (W.D. Tex. July 30, 2020) (finding "ample business and professional experience" where plaintiff was a lawyer with years of experience as an "accomplished" legal recruiter); *Montalvo v. Aerotek, Inc.*, No. 5:13-CV-997-DAE, 2014 WL 6680421, at *15 (W.D. Tex. Nov. 25, 2014) (plaintiff found to have sufficient business acumen where she was college educated and with fifteen years of work experience).

Yet, "[a]n understanding of the clear and unambiguous language of the requires no extraordinary level of sophistication," and unlike the defendant in *Zavala*, which did not claim

6

that its former employee's "background particularly prepared her to understand the significance of the waiver," here Lincare claims that Hudson "was educated, experienced, and capable of reading the plain language in the Jury Trial Waiver." Dkt. 20, at 8; Dkt. 20-1; *Zavala*, 2015 WL 5604766, at *2. Hudson is not quite as sophisticated as other individuals found to have sufficient business acumen, but the jury trial waiver provision was unambiguously worded, Hudson was educated, she had been previously employed, she was "able to understand the import of a jury waiver provision," *Jones*, 2017 WL 3887235, at *4. This factor, therefore, weighs slightly in favor of enforcement of the jury waiver provision.

### C. Opportunity to Negotiate

The Court finds that the third factor weighs against enforcement of the jury trial waiver. "In determining the negotiability of a contract, courts consider whether there was actual negotiation over the terms of the contract." *Zavala*, 2015 WL 5604766, at *3. Here, there was no negotiation of the jury trial waiver—it was provided to Hudson as "part of a stack of paperwork to sign … as a condition of [her] employment." Dkt. 21-1, at 1; *see* Dkt. 20-2, at 1 ("as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury."). Although Lincare is correct that a failure to negotiate the terms of a jury trial waiver does not render the instrument non-negotiable, the unilateral nature of the waiver "demonstrates that [Hudson] lacked a realistic opportunity to negotiate at arms-length." *RDO*, 191 F. Supp. 2d at 814; *De la Rosa*, 328 F. Supp. 3d at 621 ("Lack of actual negotiations, however, does not necessarily mean the contract was not negotiable."). Because the jury trial waiver only applied to Hudson and there was no actual negotiation of the waiver, the Court finds that this factor weighs against enforcement of the jury trial waiver. *Zavala*, 2015 WL 5604766 at *5 ("the jury waiver is

unilateral, which suggests that … the parties lacked an opportunity to negotiate the terms of the jury waiver."); *RDO*, 191 F. Supp. 2d at 814 ("wholly one-sided" jury waiver demonstrated that employee "lacked a realistic opportunity to negotiate at arms-length with" employer); *cf. MWK*, 2020 WL 4370138 at *3 (bilateral jury waiver provisions imply negotiability).

### D. Conspicuousness

The final factor weighs in favor of enforcement of the jury trial waiver, as it was presented to Hudson as a plainly worded one-page document that included the waiver provisions in bold right above the signature line. Dkt. 20-2. Hudson cites no authority for her suggestion that the jury trial waiver was inconspicuous because it was included "among a stack of other documents she was handed to sign" on her first day of employment and she does not remember signing it. Dkt. 21, at 9. In contrast, courts have found jury waiver provisions such as the one at issue here—a conspicuously labeled provision set apart from other agreements that included bolded language just above the signature line—to be sufficiently conspicuous to favor enforcement. *Jones*, 2017 WL 3887235, at *3 ("In determining the conspicuousness of a contract provision, courts ask whether the provision was in bold-face or conspicuous type."); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 56 F. Supp. 2d 694, 708 (E.D. La. 1999) ("clearly written … block print" waiver provisions "just above the signature line" sufficiently conspicuous). Here, the jury waiver here was not difficult "for the average person to read," and as such, the conspicuousness of the jury waiver provision weighs in favor of its enforcement. *RDO*, 191 F. Supp. 2d at 814.

\*   \*   \*

The jury waiver's conspicuousness weighs in favor of its enforcement. Hudson's business experience weighs only slightly in favor of enforcement. The disparity in bargaining power and

lack of opportunity to negotiate, however, both weigh against a finding that Hudson knowingly and voluntarily waived her right to a jury trial. Though this is a somewhat close case, because the Court "will indulge every reasonable presumption against a waiver," the Court will deny Lincare's motion to strike Hudson's jury demand. *RDO*, 191 F. Supp. 2d at 813; *MWK*, 2020 WL 4370138, at *1 ("courts should 'indulge every reasonable presumption against waiver'" (citing *Aetna*, 301 U.S. at 393)).

## IV.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Lincare's Motion to Strike Jury Trial Demand, Dkt. 20, is **DENIED**.

**SIGNED** on September 17, 2021.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE